———o———

Thomas Gaff *et al*. Appellants, *vs*. Henry A. Homeyer, Respondent.

George W. Cochrane, Appellant, *vs*. Henry A. Homeyer Respondent.

1. *Sales of corn, conditioned on examination—Receipt of order of delivery, etc.* —Where an agent agreed on behalf of his principal to buy certain car loads of corn, if, on examination, it answered the bargainor's representations; and the agent inspected the corn and received an order on the railroad company for the car loads, which order he failed to return within a reasonable time: *Held*, that the facts amounted to a sale and delivery of the corn.

*Appeal from St. Louis Circuit Court.*

*Bell & Thompson*, for Appellants.

I. The acceptance in this case was conditional and to be determined on inspection. Something remained to be done. (Jones vs. Pearce, 25 Ark., 545 ; Hutton vs. Moore, 62 Ark., 382 ; Cunningham vs. Ashbrook, 20 Mo., 553 ; Bast vs. Walsh, 39 Mo., 198 ; Southw. Fr. & Cot. Pr. Co. vs. Stanard, 44 Mo., 83 ; Henning vs. Powell, 33 Mo., 468.)

II. To take a case out of the statute of frauds, the delivery and acceptance must be shown by unequivocal acts. (Perry vs. Calvert, 22 Mo., 360 ; Lovelace vs. Stewart, 23 Mo., 385 ; Harvey vs. St. L. Butchers Ass'n, 39 Mo., 211 ; Bast vs. Walsh, *supra;* Johnson vs. Cuttle, 105 Mass., 449 ; Quintard vs. Bacon, 99 Mass., 185.)

*James Taussig*, for Respondent.

I. The evidence shows conclusively an inspection of six car loads by Edson, an acceptance of an order on defendant's

bailee for the eight loads, an actual delivery of six car loads at Kingsbury's ware-house, and actual delivery of two car loads at Halliday's ware-house, and a shipment and user by plaintiffs of the two car loads not inspected by Edson.

II. The delivery by the vendor to the vendee, of an order on a depositary for the goods sold, is a delivery of the goods. (Sigerson vs. Harker, 15 Mo., 101; Glasgow vs. Nicholson, 25 Mo., 29; Caldwell vs. Garner, 31 Mo., 131; Williams vs. Evans, 39 Mo., 201; Sigerson vs. Kahmann, 39 Mo., 206.)

NAPTON, Judge, delivered the opinion of the court.

These suits were, by consent, tried together. The plaintiffs claimed that Homeyer was indebted to them in a deposit of $500 and $924, as the value of a lot of sacks shipped to Homeyer. These items are not now disputed, as they were allowed, upon a deduction of $200 advanced to Cochrane, but the defendant set up a counter-claim for 2796 bushels of corn alleged to have been sold to plaintiffs and delivered to them, at the price of 80c per bushel, and the only question in the cases is as to the counter-claim. It was allowed by the jury under instructions, and the only question here is as to the propriety of the instructions.

The dispute was, whether there was in fact a sale and delivery of the corn charged in the counter-claim.

The evidence in regard to the claim was conflicting, and utterly irreconcilable, and the case really depended on questions of fact.

The jury found under the instructions, in favor of the counter-claim.

It is impossible to reconcile the statements of Whitmore, the agent of Homeyer, with the statements of Cochrane and his agent, Edson. They conflict on material points, and this was a matter for the jury. We have no authority to interfere with their verdict, unless the instructions given by the court were wrong, and the propriety of these instructions is the only question here.

Whitmore's statement makes out a clear case of sale and delivery of the corn. He says, he met Cochrane on his way to a steamboat about starting for Memphis, and told him they (Homeyer & Co.) had eight car loads of corn rejected by the government, it was slightly damaged by sweating, and as he had been informed that Cochrane was buying this sort of corn, he offered it to him, first at $1.00, and then at 80c. per bushel. Cochrane said he did not have time to examine the corn, but requested Whitmore to see Edson, his agent, and tell Edson that he had bought the corn at 80c., provided Edson, upon inspection, thought the corn was good enough. Whitmore then called upon Edson, and after some delay the cars were found on the track of the Illinois C. R. R. Co., or rather six of them, and Edson examined them and said they were good enough. Two of the cars were not found. Whitmore then gave Edson an order on the R. R. Co., to deliver the eight cars to Cochrane & Co., and that terminated his knowledge of the transaction.

This order was as follows: "Agent I. C. R. R. Co., Cairo, deliver to Gaff, Cochrane & Co. or order, cars 2259, 2672, 1030, 3131, 2911, 2639, 2457 and 2461, consigned to us.

H. A. HOMEYER & Co."

On the other hand, Cochrane gave a very different version of what passed between him and Whitmore. He states that as he was going down to the boat, which was about starting for Memphis, with his carpet bag in his hand, he met Whitmore, who said to him that he had a lot of corn for sale, which had been rejected by the government, not on account of its quality, but because there was no room for it, and that on Whitmore's saying the price was 80c., he said he would instruct Mr. Edson, his agent, to examine the corn, and if it suited he would take it.

Edson's statement, although conceding that he examined six car loads of the corn, was quite positive that he never received the corn, at the same time admitting that he received the order on the R. R. Co., and in fact, the commission house of plaintiff, shipped two car loads of the corn to Memphis, to Gaff, Cochrane & Co.

The instructions, in regard to this matter, given by the court, were these:

"If the jury find from the evidence, that the agent of H. A. Homeyer & Co. delivered to the agent of plaintiffs an order for the corn in question, and that a part of the corn was actually received and used by plaintiffs, then such receiving and using of the corn is evidence to be considered by the jury, as tending to show that the corn described in the order was delivered to them by H. A. Homeyer & Co.

"If the jury believe from the evidence, that George W. Cochrane, on behalf of Gaff, Cochrane & Co., agreed with Henry Whitmore, on behalf of H. A. Homeyer & Co., to purchase eight car loads of rejected corn, subject to the inspection of Edson, at 80c. per bushel, and if the jury further believe that Edson inspected the corn ; that the corn was at the time in possession of the Ill. C. R. R. Co., as agent for H. A. Homeyer & Co., that Edson received and accepted the order of H. A. Homeyer & Co., on the Ill. C. R. R. Co., for the corn in question, and kept such order without returning the same within a reasonable time, then the delivery of such order to Edson was a delivery of the corn described in the order; and if the jury find that the eight car loads of corn were thus sold and delivered," &c.

The remainder of this instruction related to a change in the firm of Homeyer & Co., and in regard to interest, about which there is no question.

The instructions asked by the plaintiffs, and refused, need not be copied, since it is clear that they are chiefly based on the hypothesis that Edson must have examined all the car loads, before there could have been a sale and delivery. It might with equal propriety have been claimed that every bushel or every sack should have been examined, but the reception by Edson of the order for all the eight car loads, and the actual shipment of two of them by plaintiff's agents, would seem to be conclusive on this point.

The defense in this case was, that there was no sale or delivery. There was no defense set up that a fraud was prac-

ticed or a misrepresentation made in regard to the quality of the corn. If Cochrane's testimony was correct, it is clear that the transaction was based on a fraudulent and false representation, in regard to the quality of the corn. But it appears that Whitmore, the agent of Homeyer & Co., called on Kingsbury, the agent of the R. R. Co., in company with Edson and introduced Edson to Kingsbury and stated the sale to Gaff, Cochrane & Co., and that Gaff, Cochrane & Co., would ship to Memphis, to all of which Edson assented.

It further appeared that Cochrane offered to pay for the two car loads shipped to Memphis, but refused to pay for the six car loads which Edson inspected.

Whether Whitmore's statement was correct or not, was submitted to the jury, and their verdict was not surprising. The instructions were substantially right, and we have been referred to no adjudicated case in which the facts found by the jury here are not considered a complete sale and delivery of the goods. It is conceded that this contract occurring in Illinois, the statute of frauds has nothing to do with the case.

We will, therefore, affirm the judgment; the other judges concur.